UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBERT THORN,

    Plaintiff,

v.                                                          Case No: 8:14-cv-862-T-36MAP

HOWARD C. RANDALL, PAULA
RANDALL, TERRY CORN, JAMES
O'NEILL, DARLA DOOLEY and LUCILE
DERKMAN,

    Defendants.
_____/

## **ORDER**

This cause comes before the Court *sua sponte*. For the reasons that follow, the Court finds that Plaintiff's Complaint is a shotgun pleading that must be dismissed.

**I.   BACKGROUND**

This case arises from an allegedly illegal search and seizure of Thorn's property. The Complaint alleges as follows: In July 2007, Defendants Howard C. Randall, Paula Randall, and Lucille Derkman, along with several other individuals not named in the instant action, filed suit against the Avon Park First United Methodist Church, Inc. and now-Plaintiff Robert Thorn. The plaintiffs in that suit alleged that Thorn had embezzled funds from the Church, and sought an accounting of the Church funds. Thorn subsequently retired from his position as pastor of the Church, and, in April 2008, the parties settled the suit.

In May 2010, Defendants Terry Corn, James O'Neill, and Carla Dooley obtained a search warrant for three storage units located in Lakeland, Polk County. At all times relevant to this case, Corn was an agent of the Florida Department of Law Enforcement; O'Neill was a police officer employed at the City of Lakeland Police Department; and Dooley was an Assistant State Attorney

working in the 10th Judicial Circuit of Florida. The search warrant was ostensibly for the purpose of investigating an embezzlement and money laundering scheme perpetrated by Thorn's sister, Mary Thorn, and although all three of the storage units were rented in Thorn's name, two of them were primarily used by his sister.

The bulk of the facts supporting the application for the warrant were provided by Mary Thorn's former colleague in an interview with Corn. To explain the connection between Thorn and his sister, however, Corn included a conversation that Dooley had with Mr. Randall on the morning of the search. During this conversation, Mr. Randall had detailed certain facts relating to the 2007 lawsuit against Thorn, and had provided other facts that would support that Thorn and his sister had conspired together to carry out the embezzlement scheme. According to Corn, Mr. Randall had also stated during the call that Thorn improperly removed some Church property.

Corn and O'Neill, with Dooley present at the search site, proceeded to execute the warrant and search the storage units. In the course of executing the warrant, Corn and O'Neill noticed items that they suspected had been taken from the Church. With Dooley's approval, Corn telephoned the Randalls to come and observe the items in the storage unit. Upon receiving Corn's call, the Randalls indicated that they were not officers or members of the Church at that time. In response, Corn asked them to bring someone who was an officer of the Church. The Randalls therefore brought Derkman, who had been elected to the Trustee Committee after the resignations of all of the then-officers of the Church as part of the 2008 settlement agreement.

At some point prior to the Randalls and Derkman's arrival, Corn and O'Neill removed some items they thought might be those described in Corn's call with the Randalls, and placed them in the storage unit across from the one they were searching. Upon the Randalls and Derkman's arrival, they were led into the unit where Corn and O'Neill had placed the items that

they speculated might be Church property. The Randalls and Derkman noted that some of the items there belonged to the Church, but that not all of them did. The Randalls and Derkman were then permitted to enter the unit that was being searched, and identified a number of items there that they believed were Church property. Corn and O'Neill subsequently delivered possession of a number of those items to Derkman.

Thorn's Complaint contains four Counts. Count I alleges that Corn, O'Neill, and Dooley violated Thorn's Fourth Amendment rights when they seized and delivered to the Randalls and Derkman property not relating to the investigation of Mary Thorn and permitted the Randalls and Derkman to identify items from the storage unit. Count II alleges that Corn, O'Neill, and Dooley violated Thorn's Fifth Amendment rights when they unlawfully seized property unrelated to Mary Thorn and delivered it into Derkman's custody. Count III alleges that all of the Defendants together conspired to deprive Thorn of his constitutional rights when they agreed to unlawfully seize Thorn's property and deliver it to the Randalls and Derkman. Finally, Count IV alleges that the Randalls and Derkman committed common law abuse of process when they maliciously misled Corn, O'Neill, and Dooley into unlawfully exercising the search warrant to seize Thorn's property and turn it over to them.

## II. DISCUSSION

A pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). Further, each claim must be "limited as far as practicable to a single set of circumstances," and each claim founded on a separate transaction or occurrence must be stated in a separate count or defense if doing so would promote clarity. Fed. R. Civ. P. 10(b). Failure to comply with these rules may result in a shotgun pleading. "A complaint that fails to articulate claims with sufficient

clarity to allow the defendant to frame a responsive pleading constitutes a 'shotgun pleading.'" *Lampkin-Asam v. Volusia County School Bd.*, 261 Fed. App'x 274, 277 (11th Cir. 2008) (citation omitted). This includes a complaint that is "disjointed, repetitive, disorganized and barely comprehensible." *Id.* at 276. Likewise, this includes a complaint in which many of the counts incorporate irrelevant information and/or legal claims. *See Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1126 (11th Cir. 2014). When faced with such a pleading, the court should strike the complaint and instruct plaintiff's counsel to file a more definite statement. *See Davis v. Coca-Cola Bottling Co. Consolidated*, 516 F.3d 955, 984 (11th Cir. 2008).

Here, Thorn's Complaint is a deficient shotgun pleading for several reasons. First, although he alleges three counts against government actors O'Neill, Corn, and Dooley, he fails to specify whether he is suing them in their individual capacities and/or official capacities.[1] An official-capacity suit requires the plaintiff to establish that a governmental "policy or custom" played a part in the violation of federal law, whereas an individual-capacity suit does not require the plaintiff to establish a connection to a "policy or custom" but entitles the defendant to assert personal immunity defenses. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991). Accordingly, there is insufficient clarity to allow the Court to address any arguments regarding personal immunity defenses, or for O'Neill, Corn, and Dooley to adequately respond to the counts against them.

Second, Count II purports to state a claim for a violation of Thorn's Fifth Amendment rights, but it is unclear whether Thorn is alleging a violation of his procedural due process rights or his substantive due process rights or both. These claims each have their own legal standards and elements of proof. It is impermissible to combine multiple claims with different legal

---

[1] From the allegations in the Complaint, the Court assumes that O'Neill, Corn and Dooley are being sued in their individual capacities, although it is not entirely clear.

standards into one count, and this type of pleading constitutes a "shotgun pleading." *See Ledford v. Peeples*, 657 F.3d 1222, 1239 (11th Cir. 2011).

Third, Count III purports to state a claim for a conspiracy to deprive Thorn of his constitutional rights. This Count, however, broadly includes all of the defendants and incorporates nearly all of the factual allegations that precede it, including those that are inconsistent, making it disjointed, disorganized, and "barely comprehensible." Indeed, the Court cannot discern specifically what agreement arose amongst which defendants, when the conspiracy actually arose, what specific acts constituted the conspiracy, or each of the defendants' specific roles and participation in the alleged conspiracy. This Count, which does not provide clarity sufficient for defendants to respond, is also a "shotgun pleading."

Finally, Count IV, a claim for common law abuse of process, incorporates and realleges most of the allegations in the preceding section 1983 counts.[2]  As a result, Count IV contains irrelevant information. *See, e.g.*, *Strategic Income Fund, LLC v. Spear, Leeds & Kellog Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002) ("The typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts . . . contain irrelevant factual allegations and legal conclusions.")

Shotgun pleadings exact an intolerable toll on the trial court's docket. While Plaintiff is permitted to file a detailed complaint, each claim asserted must be free of superfluous, lengthy, and immaterial factual allegations. Because it constitutes a shotgun pleading, Plaintiff's Complaint will be dismissed without prejudice.

---

[2] Counts II and III also incorporate and reallege most of the allegations from the preceding counts of the Complaint.

5

Accordingly, it is hereby **ORDERED**:

1. Plaintiff's Complaint (Doc. 1) is **DISMISSED without prejudice** as a shotgun pleading. Plaintiff is granted leave to file an Amended Complaint within **FOURTEEN (14) DAYS** from the date of this Order which corrects these deficiencies.

**DONE AND ORDERED** in Tampa, Florida on October 10, 2014.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any