UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBERT THORN,

    Plaintiff,

v.                                                                      Case No: 8:14-cv-862-T-36MAP

HOWARD C. RANDALL, PAULA
RANDALL, TERRY CORN, JAMES
O'NEILL, DARLA DOOLEY and
LUCILLE DERKMAN,

    Defendants.
_____/

## **ORDER**

This cause comes before the Court upon the Motions to Dismiss filed by Defendants James O'Neill (Doc. 54); Howard C. Randall, Paula Randall, and Lucille Derkman (Doc. 56); and Terry Corn and Darla Dooley (Doc. 57). Plaintiff Robert Thorn ("Thorn") responded in opposition to each of the motions (Docs. 62, 65, and 64, respectively). The Court, having considered the parties submissions and being fully advised in the premises, will now GRANT-IN-PART and DENY-IN-PART the Motions to Dismiss filed by O'Neill, Corn, and Dooley; and GRANT-IN-PART and DENY-IN-PART the Motion to Dismiss filed by the Randalls and Derkman.

**I.**     **STATEMENT OF FACTS[1]**

This case arises from the allegedly illegal search and seizure of Thorn's property. The allegations are as follows: In July 2007, the Randalls and Derkman (collectively, the "Civilians"), along with several other individuals not a part of the instant action, filed suit against the Avon Park

---

[1] The following statement of facts is derived from Plaintiff's Amended Complaint (Doc. 50), the allegations of which the Court must accept as true in ruling on the instant Motions to Dismiss. *See Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F. 2d 989, 994 (11th Cir. 1983).

First United Methodist Church, Inc. and Thorn. Doc. 50-3. That litigation arose over the alleged embezzlement of church funds by Thorn, and was settled in 2008, resulting in the resignation of all the then-officers of the Church. *Id.*; Doc. 50 ¶ 45.

In May 2010, Corn, O'Neill, and Dooley (collectively, the "Officers") obtained a search warrant in connection with an investigation into an embezzlement and money laundering scheme allegedly perpetrated by Thorn's sister, Mary Thorn. Doc. 50 ¶¶ 10-11. At all times relevant to this case, Corn was an agent of the Florida Department of Law Enforcement ("FDLE"), stationed in the Lakeland, Polk County office of the FDLE; O'Neill was a police officer employed at the City of Lakeland Police Department; and Dooley was an Assistant State Attorney working in the 10th Judicial Circuit of Florida. *Id.* ¶¶ 7-9. The search warrant covered three storage units located in Lakeland, Polk County, which were rented in Thorn's name, but of which two were used primarily by Mary Thorn. *Id.* ¶¶ 10, 13-14.

The bulk of the facts supporting the application for the search warrant were provided by Mary Thorn's former colleague in an interview with Corn. Doc. 50-2 at 5-7. However, to explain the connection between Thorn and his sister, Corn also included details regarding a conversation that he had had with Mr. Randall on the morning of the search, during which Mr. Randall detailed certain facts relating to the 2007 lawsuit against Thorn, and provided other facts indicating that Thorn and his sister conspired together to carry out the embezzlement scheme. *Id.* at 8-9. According to Corn, Mr. Randall also stated during the call that Thorn had improperly removed some property from the Church. *Id.* at 9. O'Neill, Dooley, and Ms. Randall were also present on the call. Doc. 50 ¶ 17. Prior to that conversation, the Randalls had been unknown to the Officers. *Id.* ¶ 19.

2

After obtaining the search warrant, Corn and O'Neill, with Dooley present at the search site, proceeded to execute the warrant and search the storage units. Doc. 50 ¶¶ 33, 35. In the course of executing the warrant, Corn and O'Neill removed items that, based on the statements made by Mr. Randall during the call with Corn, they suspected had been taken by Thorn from the Church, and placed them in an adjacent vacant unit. *Id.* ¶ 39. None of these items appeared to belong to anyone other than Thorn—the property bore no identifying labels, and the boxes that were removed were addressed to Thorn at the Church's address, where he formerly resided. *Id.* ¶¶ 40-42.

Corn or Dooley then telephoned the Randalls to inform them of the items removed from Thorn's storage unit. *Id.* ¶ 44. Upon receiving the call, the Randalls indicated that they were not officers or members of the Church at that time. *Id.* Corn or Dooley then asked the Randalls to bring someone who was an officer of the Church. *Id.* Accordingly, the Randalls brought Derkman, who had been elected to the Trustee Committee after the resignations of all of the then-officers of the Church as part of the 2008 settlement agreement. *Id.* ¶ 45.

After the Civilians arrived, they were led into the unit where Corn and O'Neill had placed the items that they speculated was Church property. *Id.* ¶ 46. The Civilians noted that some, but not all, of the items in that unit belonged to the Church. *Id.* ¶ 48. The Civilians were also permitted to enter the unit that was being searched, and informed Corn that they believed that a number of items remaining there belonged to the Church. *Id.* ¶ 47. Corn and O'Neill subsequently delivered possession of a number of those items to Derkman. *Id.* ¶¶ 49-51.

Thorn and his wife subsequently petitioned the Circuit Court in Polk County to order the return of these items. *Id.* ¶ 61. The Circuit Judge ultimately ruled in the Thorns' favor and ordered the items returned. *Id.* ¶ 62. Although most of the items were eventually returned to Thorn, not

all of the items were returned, and some of the items were damaged and/or had otherwise lost value by the passage of time. *Id.* ¶ 63.

Thorn alleges that Defendants violated his constitutional rights by seizing the items. The Amended Complaint contains five Counts: Count I alleges that the Officers violated Thorn's Fourth Amendment rights; Counts II and III allege that the Officers violated Thorn's Fifth and Fourteenth Amendment rights; Count IV alleges that all of the Defendants together conspired to deprive Thorn of his constitutional rights; and Count V[2] alleges that the Civilians committed common law abuse of process against Thorn. Thorn sues the Officers solely in their individual capacities.

Each of the Defendants now seeks to dismiss the Counts asserted against him or her.

## II.    STANDARD OF REVIEW

To survive a motion to dismiss, a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, mere naked assertions are not sufficient. *Id*. A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.*

---

[2] The Amended Complaint labels this Count as Count IV. *See* Doc. 50 at 17. Given that the previous Count is correctly numbered Count IV, *see id.* at 15, the Court will hereinafter refer to the abuse of process count as Count V.

**III.     DISCUSSION**

    **A.     The Officers' Motions to Dismiss**

The Officers argue that they are entitled to absolute and/or qualified immunity as to all of the Counts asserted against them. They argue also that Thorn has failed to state a claim upon which relief may be granted.

    *1.     Absolute Immunity*

Dooley argues that she is entitled to prosecutorial immunity. Prosecutors are afforded absolute immunity "for all activities that are 'intimately associated with the judicial phase of the criminal process.'" *Rehberg v. Paulk*, 611 F.3d 828, 837 (11th Cir. 2010) (quotation marks and citation omitted), *aff'd by* 132 S. Ct. 1497 (2012). Prosecutorial immunity "extends to a prosecutor's acts undertaken . . . in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of [her] role as an advocate for the State." *Id.* at 838 (quotation marks and citation omitted). However, if a prosecutor functions in a capacity unrelated to her role as an advocate for the State, she is not protected by absolute immunity. *See Kalina v. Fletcher*, 522 U.S. 118, 126 (1997). Accordingly, to determine whether absolute immunity applies, a court must examine "the nature of the function performed, not the identity of the actor who performed it." *Id.* at 127 (quotation marks and citation omitted).

After carefully considering the allegations in the Amended Complaint, the Court finds that, at this stage in the proceedings, it cannot conclude that Dooley was performing a function associated with her role as an "advocate for the State" during the course of the allegedly unlawful search and seizure. Rather, after drawing all reasonable inferences in Thorn's favor, it appears that Dooley was acting in an investigative capacity not unlike Corn and O'Neill. *See, e.g.*, Doc. 50 ¶ 35 ("Defendant Dooley [] was participating with Corn and O'Neill in the search, [and] called

the Randalls to come to the scene of the search, to identify items"); *compare Rehberg*, 611 F.3d at 837 (prosecutorial acts include, for example, "conduct before grand juries, statements made during trial, examination of witnesses, and presentation of evidence in support of a search warrant during a probable cause hearing").

Accordingly, at this stage in the proceedings, Dooley cannot prevail on the basis of absolute immunity.[3] *See Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) (a prosecutor is not entitled to absolute immunity if she "performs the investigative functions normally performed by a detective or police officer"); *Jones v. Cannon*, 174 F.3d 1271, 1282 (11th Cir. 1999) ("The official seeking absolute immunity bears the burden of showing such immunity is justified."). However, Dooley may nevertheless be entitled to qualified immunity. *See Marrero v. City of Hialeah*, 625 F.2d 499, 510 (5th Cir. 1980) ("to the extent [the prosecutor] was acting within the scope of his duties by participating in the search and seizure, he should be entitled to the same qualified immunity . . . both necessary and sufficient to preserve the ability of police officers to function effectively").

### 2. *Qualified Immunity*

The Officers each raise a qualified immunity defense. Qualified immunity protects government officials performing discretionary functions from being sued in their individual capacities unless their conduct violates a clearly established statutory or constitutional right. *See Brannon v. Finkelstein*, 754 F.3d 1269, 1278 (11th Cir. 2014).

In order to establish a defense of qualified immunity, a government official must first demonstrate that he or she was acting within his or her discretionary authority. *See Dalrymple v. Reno*, 334 F.3d 991, 995 (11th Cir. 2003). In making this determination, courts assess "whether

---

[3] Dooley remains free to assert an absolute immunity defense on a motion for summary judgment should the evidence obtained during discovery support such.

the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004).

The burden then shifts to the plaintiff to show that qualified immunity is not appropriate. *See Dalyrymple*, 334 F.3d at 995. To evaluate whether qualified immunity is appropriate, a court determines (1) whether the facts alleged make out a violation of a constitutional right; and (2) whether that right was "clearly established" at the time of the alleged misconduct. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). A court has the discretion to address the two prongs of the analysis in either order. *See id.* at 236. For purposes of this inquiry, a right is "clearly established" if "(1) case law with indistinguishable facts clearly establish[es] the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law [] clearly establishes a constitutional right; or (3) [the] conduct [was] so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Maddox v. Stephens*, 727 F.3d 1109, 1121 (11th Cir. 2013) (quotation marks and citation omitted).

Thorn argues that the Officers are not entitled to raise a qualified immunity defense because they have failed to carry their initial burden of establishing that they were acting within their discretionary authority during the execution of the search warrant. Specifically, Thorn contends that the Officers were acting outside of the scope of their authority when they investigated Thorn's alleged embezzlement of church property, because that alleged crime occurred in Highlands County, which is outside the jurisdiction of O'Neill (an officer of the City of Lakeland Police Department), Corn (an FDLE agent stationed in Lakeland) and Dooley (a prosecutor for the 10th Judicial Circuit). Rather, according to Thorn, the investigation and prosecution of that alleged crime properly fell within the jurisdiction of the Avon Park Police Department.

Thorn's argument is without merit. Critically, it is undisputed: (1) that O'Neill was on duty as a Lakeland Police Officer during the course of obtaining and executing the search warrant, and that he was authorized to execute the search warrant as it related to Mary Thorn; (2) that Corn was on duty as an FDLE agent during the course of obtaining and executing the search warrant, and that he was authorized to execute the search warrant as it related to Mary Thorn; and (3) that Dooley was authorized to investigate and prosecute cases occurring within the 10th Judicial Circuit of Florida, including the criminal case against Mary Thorn. These objective circumstances "compel the conclusion that [the Officers'] actions were undertaken pursuant to the performance of [their] duties and within the scope of [their] authority," *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988). *See Holloman*, 370 F.3d at 1266 ("in assessing whether a police officer may assert qualified immunity against a Fourth Amendment claim, we do not ask whether he has the right to engage in *unconstitutional* searches and seizures, but whether engaging in searches and seizures *in general* is a part of his job-related powers and responsibilities"). Here, despite the fact that the Officers may have seized items unrelated to Mary Thorn's alleged crimes during the execution of the warrant, it is clear that they were performing a function that, "*but for* the alleged constitutional infirmity, would have fallen with[in] [their] legitimate job description," *id.*[4]

Because the Officers have carried their initial burden of establishing that they were acting within the scope of their discretionary authority in obtaining and executing the search warrant, the question remaining is whether Thorn has adequately alleged a violation of his clearly established constitutional rights.

---

[4] *State v. Griffis*, 502 So. 2d 1356 (Fla. 5th DCA 1987), upon which Thorn attempts to rely, is inapposite. That case stated only that "a municipal police officer has no power to act as a police officer outside the territorial limits of his municipality." *Id.* at 1357. Here, as alleged by Thorn, the storage units were located in Lakeland, which is within the territorial limits of the Officers' authority.

8

*3.     Count I: Fourth Amendment violation*

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. Amend. IV. The scope of a search and seizure is governed by the terms of a warrant, which must particularly describe the place to be searched and the things to be seized. *See Walter v. United States*, 447 U.S. 649, 656-57 & n.8 (1980). Accordingly, law enforcement officers violate the Fourth Amendment when they "tak[e] action[] unrelated to the objectives of the authorized intrusion." *Arizona v. Hicks*, 480 U.S. 321, 325 (1987).

Thorn concedes that the search warrant was valid, and does not dispute that the Officers had the right to search his storage unit pursuant to the warrant. However, Thorn asserts that the seizure of his items during the search exceeded the scope of the warrant and violated his clearly established constitutional rights. The Officers disagree, and argue that the items seized reasonably fell within the scope of the investigation of Mary Thorn and/or the scope of the search warrant.

In resolving this issue, the Court begins by recognizing that the seizure of items outside the scope of a warrant is not necessarily unconstitutional. *See Gordon v. Beary*, 444 Fed. App'x 427, 433 (11th Cir. 2011). Rather, the relevant question is "whether the search and seizures were reasonable under all the circumstances. . . . Such things as the scope of the warrant, the behavior of the searching agents, the conditions under which the search was conducted, and the nature of the evidence being sought must be considered in determining whether or not the search was reasonable." *Id.* (quotation marks and citations omitted). For example, in *Gordon*, the owner and operator of a pharmacy suspected of trafficking controlled substances contended that the officers violated her clearly established constitutional rights when they seized items beyond the scope of the search warrant, such as "unopened cabinets, cases of expired medicine, miscellaneous drugs,

9

non-controlled prescriptions, tampons, penicillin, vitamins, saline, [and] pimple cream . . . ." *Id.* at 430. The Eleventh Circuit rejected her argument, holding that the officers had not violated her Fourth Amendment rights by seizing those items because there was "no organization" in the pharmacy and the non-controlled medications seized were commingled with non-expired medications, cigarettes, bottles containing various unidentified pills, and pills in the drawers. *See id.* at 433-34. Similarly, in *United States v. Schandl*, 947 F.2d 462, 465 (11th Cir. 1991), the Eleventh Circuit rejected the plaintiff's argument that his Fourth Amendment rights had been violated when agents investigating tax evasion seized items such as love letters and personal documents, which the plaintiff contended were outside the scope of the search warrant. In so holding, the court noted that "the vast majority of the documents seized were within the scope of the warrants. It was inevitable that some irrelevant materials would be seized as agents searched through numerous documents for evidence of tax evasion and failure to file, crimes that are generally only detected through the careful analysis and synthesis of a large number of documents." *Id.*

Applying these principles, the Court concludes that here, Thorn has adequately pleaded a violation of his clearly established constitutional rights. Importantly, the search warrant makes clear that the scope of the search and seizure was limited to investigating Mary Thorn's alleged embezzlement and money laundering scheme, which involved her purchase of bulk electronics with purloined funds. *See* Doc. 50-2. Indeed, the search warrant permitted the Officers to search for and seize documents and items related to the alleged crimes committed by Mary Thorn, such as electronic merchandise, financial and accounting documentation and records, computer data, removable storage media, and any other "fruits and instrumentalities" of theft and money laundering. *See id.*

However, the allegations in Plaintiff's Amended Complaint establish that some of the actions taken by the Officers during the execution of the warrant were clearly "unrelated to the objectives of the authorized intrusion," *Hicks*, 480 U.S. at 325. To begin with, the nature of some of the seized items—for example, two air mattresses, steel shelving units, and a ladder, *see* Doc. 50-4— went far beyond the bounds of the warrant. Even if some of Thorn's items had been commingled with (or otherwise related to) the fruits and/or instrumentalities of Mary Thorn's alleged crimes, it is unclear how items such as these were even arguably within the scope of the warrant or otherwise relevant to the investigation of Mary Thorn's alleged crimes. The fact that the Officers *did not* seize many items but instead turned them over to Derkman further undermines their assertion that they had a reasonable, mistaken, and/or good faith belief that they were lawfully executing the warrant. Had the Officers truly believed that they were seizing items pursuant to the warrant and/or related to the investigation of Mary Thorn, they would not have turned those potential instrumentalities of crime over to the Civilians. Finally, the fact that the Officers had to call the Civilians to the scene to identify many of the items that they ultimately turned over to Derkman highlights the absence of any legally justifiable reason to seize those items.

Here, unlike *Gordon* and *Schandl*, it can reasonably be inferred from the Amended Complaint that the Officers intentionally seized items that they knew to be outside the scope or legitimate purposes of the search warrant, and for which they had no otherwise legally justifiable basis to seize. Under these circumstances, no reasonable officer could have believed that the seizure of those items was lawful. Accordingly, Thorn has adequately pleaded a violation of his clearly established Fourth Amendment rights, and the Officers are not entitled at this stage in the

proceedings to qualified immunity on this Count.[5] *See Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1251-52 (11th Cir. 2013). The Court, therefore, will deny the Officers' Motions to Dismiss as they relate to Count I.

### 4. *Counts II and III: Fifth and Fourteenth Amendment Violations*

The Officers argue that Thorn has failed to state a claim for a violation of his due process rights. The Court agrees.

*First*, Thorn has not pleaded an actionable violation of his procedural due process rights. "[A] § 1983 claim alleging the denial of procedural due process requires proof of three elements: (1) a deprivation of constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Cook v. Randolph County, Georgia*, 573 F.3d 1143, 1148-49 (11th Cir. 2009) (quotation marks and citation omitted). Notably, a procedural deprivation may be cured by providing a "later procedural remedy," *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994), which may consist of both the process employed by the entity whose action is in question, as well as any remedial process available in the state courts, *see Horton v. Bd. of County Comm'rs*, 202 F.3d 1297, 1300 (11th Cir. 2000). "[O]nly when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise." *Cotton v. Jackson*, 216 F.3d 1328, 1330-31 (11th Cir. 2000) (quotation marks and citation omitted).

Here, it is clear that there was an adequate process to remedy the deprivation of Thorn's property interests. Namely, Thorn was able to, and did in fact, petition the Circuit Court in Polk County for the return of his property. *See* Doc. 1-11; Doc. 50 ¶ 61. Thorn further obtained the

---

[5] The Officers remain free to assert a qualified immunity defense on a motion for summary judgment should the evidence obtained during discovery support such.

relief he sought in the form of an order directing that his items be returned. *See* Doc. 1-12; Doc. 50 ¶ 62. Thorn has not alleged, and cannot argue, that he was in any way deprived of process or that the process available to him was in any way insufficient. Because post-deprivation remedies were available to Thorn, and Thorn was able to avail himself of them, Thorn has failed to plead a procedural deprivation actionable under Section 1983.

*Second*, Thorn has also failed to state a claim for a violation of his substantive due process rights. "The substantive component of the Due Process Clause protects those rights that are 'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty.'" *Greenbriar Village, L.L.C. v. Mountain Brook, City*, 345 F.3d 1258, 1262 (11th Cir. 2003) (quotation marks and citation omitted). "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quotation marks and citation omitted).

Here, as conceded by Thorn, his claim relating to the allegedly unlawful seizure of his property properly falls under the Fourth Amendment. *See, e.g.*, Doc. 64 at 15 ("There are few, if any, more fundamental rights than that set out in the Fourth Amendment"); *see also* Section III.A.3, *supra*. Accordingly, Thorn has failed to state a violation of his substantive due process rights. *Accord Tinney v. Shores*, 77 F.3d 378, 381 (11th Cir. 1996) (where the plaintiffs alleged that law enforcement officers unlawfully seized their mobile home, dismissing plaintiffs' substantive due process claim because the claim must be analyzed under the Fourth Amendment).

Thorn has failed to state an actionable claim under Rule 12(b)(6), Fed. R. Civ. P., for a violation of his due process rights. For these reasons, the Court will grant the Officers' Motions

to Dismiss as to Counts II and III.  Additionally, as no claim for relief has been asserted, Defendant O'Neill is entitled to qualified immunity as to Counts II and III.

          5.        *Count IV: Conspiracy to Deprive Constitutional Rights*

"A plaintiff may state a § 1983 claim for conspiracy to violate constitutional rights by showing a conspiracy existed that resulted in the actual denial of some underlying constitutional right." *Grider v. City of Auburn, Alabama*, 618 F.3d 1240, 1260 (11th Cir. 2010).  "The plaintiff attempting to prove such a conspiracy must show that the parties reached an understanding to deny the plaintiff his or her rights.  The conspiratorial acts must impinge upon the federal right; the plaintiff must prove an actionable wrong to support the conspiracy." *Id.* (quotation marks and citation omitted).  The existence of a Section 1983 conspiracy may be established by circumstantial evidence.  *See id.*

Thorn alleges that all of the Defendants together conspired to deprive him of his constitutional rights.  Specifically, according to Thorn, the conspiracy began when the Randalls conversed with Dooley, continued when the Officers called the Civilians to the site of the search to identify Thorn's items, and culminated in the Officers turning the identified items over to Derkman.  The Officers argue that Thorn's conspiracy claim must be dismissed because Thorn has failed to establish an actual denial of his underlying constitutional rights, and because the allegations do not support the existence of any agreement between the Officers and the Civilians.

After careful consideration, the Court finds that Thorn has adequately alleged a Section 1983 conspiracy claim.  *First*, as discussed in Section III.A.3, *supra*, Thorn has pleaded a violation of his clearly established Fourth Amendment right to be free from unreasonable searches and seizures.  *Second*, the alleged acts—namely, that the Officers called the Civilians to identify Thorn's items, and then turned those items over to the Civilians—give rise to the reasonable

inference that the parties had an understanding to unlawfully seize, and willfully participated in the seizure of, Thorn's items. Although Thorn does not allege that the parties had an explicit agreement or otherwise support his claim with "smoking gun" evidence, that is not necessary. *See Bendiburg v. Dempsey*, 909 F.2d 463, 469 (11th Cir. 1990) (nothing more than an "understanding" and "willful participation" is necessary).

The Court recognizes that Thorn also alleges that the Civilians misled the Officers, which may suggest that there was no agreement or understanding between the Defendants. *See* Doc. 50 ¶ 133 ("Defendants Randalls and Derkman [] proceeded to misinform and mislead Defendants Corn, O'Neill and Dooley, into unlawfully exercising the search warrant"); *see also id.* ¶ 138. For two reasons, however, these allegations fails to undermine the conspiracy claim. To begin with, these allegations are a part of Count V, abuse of process, only, and are not a part of the conspiracy count, and therefore should not be considered in evaluating the conspiracy count. Indeed, a plaintiff is permitted to plead alternative statements of a claim and inconsistent theories of relief. *See Allstate Ins. Co. v. James*, 779 F.2d 1536, 1540-41 (11th Cir. 1986); Fed. R. Civ. P. 8(d)(2) & (3). Moreover, even if the Court were to consider these allegations in evaluating the conspiracy count, the allegations would suggest only that there was no agreement in obtaining or executing the search warrant, but would not undermine the inference that, at some point *after* the Officers began the search, there arose an understanding among the Defendants to unlawfully seize Thorn's items.

The Court agrees with Defendants that Thorn's pleadings are not a model of clarity and that certain details, such as what acts constituted the start of the conspiracy and when the understanding between the parties actually arose, remain uncertain. What is clear, however, is that Defendants were acting in concert at least by the time they began to identify and seize Thorn's

personal items. That is sufficient at this stage in the proceedings to establish the existence of a conspiracy between Defendants.

For the above-stated reasons, the Court will deny the Officers' Motions to Dismiss as they relate to Count IV.

### B.     The Civilians' Motion to Dismiss

The Civilians argue that Thorn has failed to state a claim for relief against them.

#### 1.     Count IV: Conspiracy to Deprive Constitutional Rights

For the reasons stated in Section III.A.5, *supra*, the Court will deny the Civilians' Motion to Dismiss as it relates to Count IV. *See Bendiburg*, 909 F.2d at 468 ("[P]rivate defendants can be held liable in a § 1983 action if they act in concert with the state officials in depriving a plaintiff of constitutional rights.").

#### 2.     Count V: Abuse of Process

To state a claim for abuse of process, a plaintiff must establish: "(1) that the defendant made an illegal, improper, or perverted use of process; (2) that the defendant had ulterior motives or purposes in exercising such illegal, improper, or perverted use of process; and (3) that, as a result of such action on the part of the defendant, the plaintiff suffered damage." *S & I Investments v. Payless Flea Market, Inc.*, 36 So. 3d 909, 917 (Fla. 4th DCA 2010). "Where the process was used to accomplish the result for which it was intended, regardless of an incidental or concurrent motive of spite or ulterior purpose, there is no abuse of process." *Id.* (quotation marks, citation, and emphasis omitted).

Thorn contends that the Civilians abused the warrant process by providing incorrect information in relation to the application for the search warrant, as well as participating in the unlawful identification and seizure of his property. The Civilians argue that Thorn's claim fails

because "if the property seized was outside the scope of the warrant, the warrant [] was not used to seize it . . . [and] if the property was within the scope of the warrant, Thorn was afforded due process . . . ." Doc. 56 at 14.

The Court finds the Civilians' arguments to be unpersuasive. At the outset, the Court acknowledges that if the items were within the scope of the warrant and they were seized by law enforcement for use against Mary Thorn, there could be no claim for abuse of process. Even assuming that the items seized were within the scope of the warrant, however, the fact that they were turned over to Derkman calls into question whether the warrant was used to accomplish the result for which it was intended, which was to investigate and prosecute the crimes allegedly committed by Mary Thorn. Further, as the allegations establish, some of the items seized were clearly outside the scope of the warrant. *See* Section III.A.3, *supra*. However, it does not necessarily follow that the warrant was not used to seize those items. Rather, it is clear that here, the warrant allowed the Officers (and subsequently, the Civilians) to gain access to Thorn's storage units and remove his personal items. Clearly, executing a search warrant directed at the instrumentalities of one person's suspected criminal activity with the ulterior motive of seizing another person's unrelated personal belongings that are suspected to be in the same location, could constitute an abuse of that search warrant.

Thorn's claim must nevertheless be dismissed to the extent it is premised on the Civilians offering allegedly false information in relation to the application for the search warrant. These alleged actions, which occurred prior to the issuance of the process, cannot constitute abuse of process. *See McMurray v. U-Haul Co., Inc.*, 425 So. 2d 1208, 1209 (Fla. 4th DCA 1983) ("[Abuse of process] is concerned with the improper use of process *after it has been issued*.") (emphasis added).

17

For the reasons stated above, the Court will grant the Civilians' Motion to Dismiss Count V to the extent it is premised on any alleged acts taken prior to the issuance of the warrant, and will otherwise deny it.[6]

## IV. CONCLUSION

Accepting the allegations of the Amended Complaint as true, and drawing all reasonable inferences in Thorn's favor, the Court concludes that Thorn has adequately alleged a violation of his clearly established Fourth Amendment rights by the Officers, as well as a conspiracy between the Officers and the Civilians to deprive him of those rights. Further, although it is not entirely clear whether the Civilians can ultimately be found to have committed an abuse of process by their alleged participation in the search and seizure, the Court finds the reasons for dismissal advanced by the Civilians to be unpersuasive.

Accordingly, it is hereby **ORDERED**:

1. Defendant O'Neill's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 54) is **GRANTED-IN-PART** and **DENIED-IN-PART**;

2. Defendants', Corn's and Dooley's, Motion to Dismiss Plaintiff's Amended Complaint (Doc. 57) is **GRANTED-IN-PART** and **DENIED-IN-PART**;

3. Counts II and III are hereby **DISMISSED**; and

4. The Motions are otherwise **DENIED**.

5. Defendants Howard C. Randall, Paula Randall, and Lucile Derkman's Motion to Dismiss (Doc. 56) is **GRANTED-IN-PART** and **DENIED-IN-PART**;

---

[6] The Court notes that Thorn's abuse-of-process theory appears to be novel, as the allegations do not necessarily establish that the Civilians caused the process to issue. It is unclear to the Court whether the Civilians may be found to "use" such process they did not procure. The Civilians, however, do not argue that the claim must be dismissed for this reason, so the Court assumes, without deciding, that such a claim is otherwise cognizable under Florida law.

6. Count V is **DISMISSED** only to the extent it is premised on any alleged acts taken prior to the issuance of the warrant; and

7. The Motion is otherwise **DENIED**.

**DONE AND ORDERED** in Tampa, Florida on June 16, 2015.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any